# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EARL FABER (K82964), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 17 C 1318 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| RANDY PFISTER, Warden,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is pro se petitioner Earl Faber's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Faber's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Background**

When considering habeas petitions, federal courts presume that the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sims v. Hyatte*, 914 F.3d 1078, 1095 (7th Cir. 2019). Where Faber has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's decisions.

*Factual Background*

Faber was charged with the shooting death of fifteen-year-old Deonte Wright, who was standing near a bus stop at Madison and Western in Chicago. Shortly after the September 2003 shooting, police identified the suspects, including Faber. Initially, Faber denied involvement, but

---

[1] Because Randy Pfister is the Warden of Stateville Correction Center where Faber is incarcerated, the Court substitutes Pfister as the Respondent under Federal Rule of Civil Procedure 25(d).

after police showed him the videotaped confessions of his co-defendants, Faber confessed and acknowledged that he was the shooter. Faber told police that they had targeted Wright to avenge an earlier gang-related murder.

Prior to trial, Faber filed two motions to suppress his confession—one based on *Miranda* violations and the other based on Fourth Amendment grounds. After conducting hearings, the trial court denied Faber's motions to suppress. Faber also filed a motion to suppress the photo array and lineup identification as unduly suggestive. Following an evidentiary hearing, the trial court denied this motion.

At trial, several eye-witnesses testified to Wright's shooting, including Willie Stallworth. The Illinois Appellate Court explained Stallworth's trial testimony as follows:

> Willie Stallworth testified that shortly after 3 p.m., he was driving his white Chevrolet Blazer when he stopped at a light at the intersection of Madison and Western. A lot of people were getting out of school. A man approached his vehicle from the left, passed behind and continued along the passenger side. Stallworth watched the man from his side-view mirror. He then observed Wright run south toward a vacant lot to his left. Wright ran in front of Stallworth's vehicle and he saw the man shoot Wright twice. Wright fell in front of the Blazer and the shooter walked up to him, put his gun under Wright's chin, and shot again. No one else shot at Wright. Stallworth testified that the offender was no more than five feet from his Blazer when he shot Wright. After shooting Wright, the man looked directly at Stallworth, turned and walked southbound…. The following day, a detective came to his residence and showed him some photographs. From the photo array, Stallworth identified Faber as the shooter. He also identified Faber in a lineup conducted at the police station on September 19, 2003.

*People v. Faber,* 974 N.E.2d 337, 341, 362 Ill.Dec. 816, 2012 IL App (1st) 093273 (1st Dist. 2012). Stallworth also made an in court identification of Faber as the shooter. *Id.*

Another eyewitness, Michael Christopher, testified at trial explaining that he and his wife were at the southeast corner of Madison and Western when he observed a two-tone blue Chevy park in front of him. He testified that two rear passengers exited the vehicle and one of the men was holding something in his hand. Christopher exited his car and watched as the man pointed a

2

gun toward people at the bus stop. He then heard gunshots and saw Wright fall in front of a white sport utility vehicle facing west on Madison. He testified that the man with the gun stood over Wright, aimed at his head, and shot him again. Christopher's wife, Martha Christopher, also saw the shooting at that time. The next day, she identified Faber from a photo array and in a lineup at the police station on September 19, 2003.

The jury also heard Faber's videotaped confession, among other evidence. The jury found Faber guilty of first degree murder and aggravated battery with a firearm in relation to another individual at Madison and Western. In October 2009, the trial court sentenced Faber to 60 years in prison for the murder conviction and 25 years for the aggravated battery conviction to be served consecutively.

*Procedural Background*

Faber, by counsel, filed a timely appeal to the Illinois Appellate Court, First Division, arguing (1) the trial judge committed reversible error when ruling that defense counsel failed to lay a proper foundation regarding hearsay evidence in contradiction of Illinois statute 725 ILCS 5/115-12; (2) trial counsel was constitutionally ineffective for failing to properly prepare his case, failing to elicit exculpatory evidence, and for not producing evidence promised during opening statements; (3) the trial court erred by not sanctioning the State for failing to provide two photo arrays and allowing testimony about Faber's identification; and (4) the trial court erred in denying the motion to suppress the unduly suggestive lineup. The Illinois Appellate Court affirmed Faber's conviction and sentence. Faber filed a petition for leave to appeal ("PLA") bringing the same claims to the Illinois Supreme Court. The Supreme Court denied his PLA in September 2012.

In April 2013, Faber filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.* In his petition, Faber presented the following arguments: (1) the State used perjured testimony regarding the photo arrays and improperly argued this perjured

3

testimony during closing arguments; (2) the identification testimony at trial was perjured; (3) he was denied his right to counsel during the physical lineup; (4) the prosecutor made misstatements during closing arguments; (5) trial counsel was constitutionally ineffective for failing to investigate and challenge the identification testimony; (6) trial counsel was constitutionally ineffective for failing to litigate the Fourth Amendment claim competently at the suppression hearing; and (7) trial counsel was constitutionally ineffective for failing to impeach witnesses. In October 2013, the trial court dismissed the petition at the first stage of the post-conviction proceedings, concluding that the petition was frivolous and patently without merit.

On post-conviction appeal, Faber, by counsel, argued that the appellate court should remand Faber's post-conviction petition because he made arguable claims of ineffective assistance of trial and appellate counsel. Faber filed a pro se motion seeking to dismiss his attorney, strike the brief, and permit the filing of a pro se brief. In his pro se brief, he argued: (1) the State used perjured testimony in relation to the photo arrays and identification; (2) he was denied the right to counsel at the physical lineup; (3) the State's misstatements during closing arguments denied him a fair trial; and (4) his counsel was ineffective for failing to investigate and adequately prepare his defense to the photo array evidence and failed to impeach witnesses. The Illinois Appellate Court considered both counseled and pro se briefs when it affirmed the denial of post-conviction relief. Faber then filed a PLA with the Illinois Supreme Court that was denied in November 2016.

**Legal Standards**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). The Supreme Court has explained that a state court's decision is "contrary to" clearly

4

established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407.

"[A] state prisoner must exhaust his remedies in state court before seeking relief in federal court." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). If a habeas petitioner fails to fully and fairly present his federal claims through one full round of state court review, he has procedurally defaulted these claims. *Tabb v. Christianson,* 855 F.3d 757, 765 (7th Cir. 2017). Also, "a federal court may not review federal claims … that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, ___ U.S.___, 137 S.Ct. 2058, 2064, 198 L.Ed.2d 603 (2017).

**Discussion**

On February 17, 2017, and again on March 27, 2017, Faber filed the present pro se petition for a writ of habeas corpus. Construing his pro se allegations liberally, *see Lund v. United States,* 913 F.3d 665, 669 (7th Cir. 2019), he asserts that: (1) trial counsel was constitutionally ineffective for failing to competently present his argument that his arrest violated Illinois statutory law, namely, 725 ILCS 5/115-12; (2) trial counsel was constitutionally ineffective for failing to impeach the State's witnesses in relation to identification testimony; (3) the State presented perjured testimony to sustain his conviction; (4) the State made misstatements during closing arguments in relation to the photo

array identification; and (5) he was denied his right to assistance of counsel during the September 2003 lineup.

*Procedural Default*

As mentioned, one aspect of procedural default is when a state appellate court's decision rests on independent and adequate state law grounds. *Davila,* 137 S.Ct. at 2064; *see also Richardson v. Griffin*, 866 F.3d 836, 842 (7th Cir. 2017) ("federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment") (citation omitted). Federal courts have long recognized that Illinois' forfeiture (waiver) rule is an independent and adequate state law procedural ground. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009).

On post-conviction appeal, the Illinois Appellate Court concluded Faber's ineffective assistance of counsel claims—that his defense attorney failed to competently present his argument about his arrest violating Illinois law and failed to impeach the State's witnesses—should have been raised on direct appeal, and thus were forfeited. Indeed, Illinois law requires that defendants raise their ineffective assistance of counsel claims on direct appeal if the claim is apparent on the record. *People v. Veach*, 89 N.E.3d 366, 375, 417 Ill.Dec. 718, 727, 2017 IL 120649, ¶ 46 (Ill. 2017). A "defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim." *Id.*; *see also Crutchfield v. Dennison*, 910 F.3d 968, 976 (7th Cir. 2018).

As to Faber's habeas claims that the State knowingly used perjured testimony and the prosecutor made misstatements at closing, the post-conviction appellate court concluded that Faber forfeited these arguments because he should have raised them on direct appeal. Due to this forfeiture, Faber has procedurally defaulted these claims, as well. *See Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014).

In his reply brief, Faber addressed the procedural default of his ineffective assistance of counsel claim about impeachment evidence concerning identification testimony. He asserts that the record was insufficient for his appellate counsel to bring this claim on direct appeal. *See Veach*, 89 N.E.3d at 375 ("[I]n Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record."). In any event, despite Faber's forfeiture, the Illinois Appellate Court addressed this claim concluding that no prejudice resulted from counsel's alleged failure to challenge the identification testimony because the record contained overwhelming evidence of Faber's guilt. Accordingly, Faber did not establish the prejudice prong under *Strickland's* ineffective assistance of counsel standard because there was not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Based on the overwhelming evidence of Faber's guilt, the Illinois Appellate Court's conclusion is a reasonable application of *Strickland*. *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (because the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" when applying "the two in tandem, review is 'doubly so.'").

Faber does not address his other procedurally defaulted claims, including whether an exception applies to his default. Therefore, the Court is barred from reviewing the merits of these claims. *Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017).

*Right to Counsel at Physical Lineup*

Last, and as Respondent admits, the post-conviction Illinois Appellate Court did not address Faber's argument that he was denied the right to counsel during the lineup. Right to counsel "means more than a lawyer at trial," it "ensures that defendants facing incarceration will have counsel at 'all critical stages of the criminal process.'" *Schmidt v. Foster*, 911 F.3d 469, 478 (7th Cir. 2018) (en banc) (citation omitted). The Sixth Amendment right to counsel attaches at "the initiation

of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality). On September 19, 2003, when police conducted the lineup, judicial criminal proceedings had not been initiated against Faber, and "the right to counsel presumptively does not attach at pre-indictment lineups." *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992). Faber's claim that he was denied counsel at the lineup is without merit.

**Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). The petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Faber must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation and quotation marks omitted). In cases where a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue only if the petitioner shows (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 485.

Here, Faber has not established that reasonable jurists would debate he had the right to counsel at his pre-indictment lineup or that the Illinois Appellate Court unreasonable applied *Strickland* to his ineffective assistance of counsel claim. Also, a reasonable jurist would not debate that the Court erred in its procedural default determinations. *See Slack*, 529 U.S. at 484 ("Where a

plain procedural bar is present and the district court is correct to invoke it to dispose of the case," the claim is not debatable). The Court therefore declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's petition for a writ of habeas corpus [1, 7] and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d). Civil case terminated.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Judge

DATED: 11/25/2019